All rise. The Illinois Public Courts Exhibition is now in session. The Honorable Justice Mayor Kate Hockford is presiding. Good morning, everyone. You may be seated. If you would call the case. Good morning. Case number 15-2531. If you would please keep your voices up when you're at the podium, and each side will have 15 minutes, and then there will be a short rebuttal. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. Jonathan Yeasting of the Office of the State Appellate Defender on behalf of my client, Walter Relerford. Today I'd like to focus on the facial challenges we have made to the constitutionality of the amended stocking and cyber-stocking statutes. At the end, I'd like to briefly discuss the issue raised in the supplemental brief concerning the increase in Mr. Relerford's term of supervised release. Your Honors, seldom has our legislature enacted a law that made so much of our discourse a felony, and perhaps never with as little attention to the details of that law as... Okay, Counselor, let's get to the gist of it. You say it's facially unconstitutional, there is absolutely no circumstance under which this law can be constitutional? That's not the standard when a First Amendment challenge is at issue, Your Honor. Unless you apply the over-breath standard. I'm sorry, I just didn't hear that. Are you applying the over-breath doctrine? It's the over-breath doctrine that's raised in one of the briefs. You don't contest the fact that at least it's constitutional as to threats. I suggest it's constitutional as to where it charges true threats. I would look at the Fourth District's People V. Dye case to find what a true threat is. If we had a statute that said true threat... No, no, I just want to... You only have 15 minutes, and you've got a lot to talk about. So, we don't have any problem with the constitutionality of the statute if we're dealing and he's been charged with threats. Two threats. Well, Your Honor, first I'd say the statute reaches things far beyond true threats. Counsel, I understand that. My only question is, is it constitutional if the charging allegations are true threats? No, Your Honor, because he's charged under an over-breath statute. Moreover, even if the charging allegations here aren't true threats, because first of all... Counsel, we know that there are charging allegations here that aren't true threats. You're suggesting that if we carve out of the statute everything but the threats, that it wouldn't be constitutional? I would say if this court construed the term threats in the statute to limit it to true threats akin to what the Fourth District defined as true threat, and people V. Dye requiring intentionality, requiring fear of imminent harm of the victim, something like what we have in... The only language in that statute was threats subject to all sorts of things that were in furtherance of the threats. The Supreme Court had no difficulty with the constitutionality of that statute. No, it did, Your Honor. It wrote in a new requirement of an unlawful purpose that was not in the statute. That's something the legislature rejected here when it put in the new subsection A. It kept it in subsection A. So, you don't think that the Supreme Court found threats to be enough? The Supreme Court found threats that would put the victim in concern of imminent physical harm to be enough, when that is coupled with the very specific conduct of following. But in this statute, all right, A3 seems to be where you find the threat language. And this defendant was charged with A1 and A2. Is that correct? He's charged with A1 and then different theories of the harms for A1 of fear of safety and emotional distress. Then the parallel charges for cyber-stalking. I would note here an official challenge of something we just saw from the Illinois Supreme Court in People v. Burns, said in the U.S. Supreme Court in Patel, is when we measure the legitimate sweep of a statute, that legitimate sweep ends when we hit things that are prohibited despite the statute. So the fact that the legislature retained in A5 this prohibition on true threats, and there were other true threat statutes, and there were other statutes that banned following with intent to harass, means that those cannot be bases to uphold this far broader statute that is, at base, a negligent infliction of emotional distress felony. I am disputing that the mens rea appears to be a negligent standard. Do you think threats are First Amendment protected speech? Well, we have a very specific definition of a true threat from the U.S. Supreme Court in Black v. Virginia. And that requires a true threat is a statement where the speaker means to communicate a serious expression of intent to commit an act of unlawful violence to a particular individual. And cases like People v. Dye and Strongly Suggested by the U.S. Supreme Court in the United States v. Amonis say that that means to communicate requires an intentionality that the object of the threat understand it to be a threat. And it's a threat not just of fear of safety. It's a threat of unlawful violence. The way this statute is written, a mere communication that puts one in fear of safety could be criminalized. And that's far too broad. For example, that kind of language would risk making a felon out of somebody that shouts four when they strike an errant ball on a golf course because if one shouts four, that's putting the party ahead of them literally in fear of their safety. Except it's not a threat. What about communicates to or about a person? I suppose that's the portion of the statute that you have the most First Amendment difficulty with. Yes, Your Honor. I suggest that perhaps the simplest resolution of a facial challenge here would be to strike that communicates to or about. One, because... If we do that, does that satisfy your needs in this case and require... It would be a challenge in reverso and then not entering a sentence on the additional counts. It saves us from striking down the entire... It saves you from striking down the entire statute. An example of this kind of severability that I believe might be mentioned in the briefs is Peter v. Alexander. That was the child pornography statute. When it came up, the challenge as to whether a ban on virtual child pornography was allowed, the Illinois Supreme Court looked at the definition of child in the statute. The facial unconstitutionality only involved one clause within the definition. It simply struck that definition on a facial First Amendment charge. Do you mean to tell me that your position would be this statute would be constitutional if the only thing we struck out was communicates to or about? No, Your Honor. It would raise a question for a different case because that would be sufficient to resolve this case. Well, it may have been sufficient to resolve this case, but it's still a constitutional issue. You've raised a facial challenge against the entire statute. You mean to tell me you would think that observing a person without a culpable men's ray in the statute would pass constitutional muster? We don't think it would pass constitutional muster. I believe the strongest challenge would be the communications and there would be an ethic of judicial reserve that would say let's not strike more than we need to to resolve the case before us. I think this court, you know, there's other actions. For example, my client's action in this case. One of the things he's charged with is standing on Michigan Avenue with a group of friends. These are clearly the kind of things that an innocent person does. And this raises some of those due process concerns that are raised later in the brief as well as to this statute sweeping in innocent conduct because it doesn't require a culpable men's ray for such ordinary things as standing on a street corner. So this court could go on and strike down the 2009 amendments as a whole or at least that broad definition of coercive conduct. Mr. Eastling, there's a what I'll call the exception clause in here. It's section D2. It says this section does not apply to an exercise of the right of free speech. It's sort of a last-minute addition apparently. Yeah, well, it's the exemption. Why do you believe that doesn't resolve anything? First, Your Honor, I suggest it's the exemption that proves the overbreath of the rule. We don't need to put in a caveat like that if we're not sweeping in the otherwise lawful exercise of free speech. It doesn't solve anything. I think a great example would be the United States v. Stevens, the videos depicting animal abuse case. There's a very similar exception clause in that statute. The U.S. Supreme Court had no problem striking it down facially. On its way to the Supreme Court, the Third Circuit, which is cited in the briefs, made comments that, first of all, this creates a vagueness problem because I have to guess beforehand whether I'm going to prevail in court as to whether my speech actually is protected by the First Amendment. So out of caution, I'm going to step back from the margins of what the First Amendment allows and silence myself, and that's exactly the kind of chilling effect that the First Amendment overbreath doctrine is concerned with. I'd also suggest, as a matter of procedure, it really means nothing because a defendant could always move to dismiss a charge on the basis that it violates the Constitution. The fact that they mention that again in the statute doesn't give the defendant anything new. If anything, it creates a danger because it's yet to be interpreted, whether this is an affirmative defense or a trial, who has the burden of proof on this issue, that somebody who is actually exercising their First Amendment rights would have to wait for trial and wait until after an indictment to be able to raise the exemption and be in prison for the three or four years it takes to get to trial in this county sometimes. It certainly does leave to the prosecutor the determination of what is or is not covered by the First Amendment, doesn't it? It certainly does, Your Honor. And I would note also in Stevens the distrust for the discretion of prosecutors that the U.S. Supreme Court had when the scope of the First Amendment is concerned, that we cannot leave to the noble ethic of prosecutors the decisions as to what kind of cases should and should not be prosecuted. In the several years since this statute was passed, there's probably thousands upon thousands of mean-spirited and hurtful conversations that have gone on in Illinois that could be actionable under this statute. Yet it seems that there's only been a small handful of prosecutions and notably in this case it's a prosecution where the complainant happened to be a high-status public figure. Mr. Euston, let me ask you to segue for a moment and talk about the cyber-stalking charge versus the stalking charge. Yes, Your Honor. There's very cursory references in the briefs to this problem, but the minimus appears to only sentence the defendant on A1, A2, which is what we'll call the plain vanilla stalking charge. What is your position as to the status of the cyber-stalking conviction, if any? The transcript appears to indicate the judge simply said he sentenced this charge, or he's found guilty of this charge rather, if I understand correctly. We don't have the colloquy the judge usually gives where he specifically merges counts and helps explain what happened. What's your position on that? Well, Your Honor, I think Aguilar itself can be a guide to this. In the gun case, he was convicted of possessing a gun outside of the home and had, I believe, an unsentenced additional conviction and owed for being underage. Once the court determined that that first count could not constitutionally stand, it went on to address the constitutionality of the second count. But that was against the trial court level. Yeah. Well, I don't think there was a Supreme Court case with that. I think somebody said in their briefs that we can presume the judge intended to merge the counts. That's how I interpret it as well, Your Honor. Especially given the overlap between the acts that are alleged. It looks like it's the court simply doing the one act, one crime doctrine. All these counts have the same sentencing provisions so that the court simply entered on count one. I want to make sure I understand what's going on here. He was only sentenced on count one. That's correct. He was unsentenced on the other counts. He was not sentenced on the other counts. Two, three, and four. Or found guilty of two, three, and four. Yeah, there was a felony of guilt on those counts. And ABR stands for the proposition, I believe, that when you have a constitutional argument as against a count, you must also address the constitutionality of the counts for which he was found guilty but not sentenced. I believe that that's right, Your Honor. Especially here because if this court does resolve the constitutionality of count one in Mr. Rella for its favor, you don't have to raise the question of should we send this back, can you send me on those other counts. And that would require addressing the constitutionality of the statute. And I'd like to briefly discuss the MSR portion of the sentence. What happened here – Can I just get to that? Can I move you back just a moment? I want to understand what you're saying about a remedy available to us that would take care of any constitutionality issues as to this defendant.  Yes, Your Honor. You would no longer have any constitutional issues? Well, striking communities to or about would be sufficient to require an outright reversal in this case. And once we hit that, there would be no necessity to go on to the additional constitutional issues as to whether these other provisions of the statute would or would not be constitutional. And what if the issue was the mens rea? If this Court determines that the flaw is the mens rea of having a negligence mens rea plus the initial knowingly itself, then I would have to, I suppose, strike the entire amended statute and then we'd fall back. I want to be clear about something. I'm looking at his indictments, all four counts. It would appear as if for count one he was charged with three things, not two, only one of which was speech. The other one is stood outside of her place of employment and entered upon her place of employment. That's count one. Count two is exactly the same. Count three talks about Facebook posting where he wanted to have sexual relations with her and threaten her coworkers. So counts three and four, the cyberstalking counts, are totally cared for if we were to strike out the communication with others, but you would still have two allegations in counts one and two, which if we didn't do something about it, he would still stand guilty of it. No, Your Honor, because first, as the Court notes, the communication proportions of count one and two are the very first things that are charged in the indictment. Second, I'd look at the proofs of trial and I suppose how the grand jury returned an indictment, which is talking about the course of conduct in its entirety causing emotional distress. So it's your position those three things that Justice Hoffman just read are separate things, but they all together form a single course of conduct, which is the gist of the indictment? Yes. It looks like the grand jury didn't return an indictment and the Court's findings of trial that rely on the e-mails and other communications further underscore that communications are the heart of this case. Had the grand jury returned an indictment of just visiting the office and standing on Michigan Avenue, this is a completely different case because then this is a case about whether seeing somebody standing on Michigan Avenue would actually reasonably cause somebody emotional distress or fear of safety. And I'd also look to Ms. Blakey's testimony. We can note that it's not him standing on the street or visiting that actually ends up leading her to call the police. It's only when a co-worker of hers forwards on these Facebooks to her that she takes the step of calling the police. And that's the ultimate cause of the emotional distress and fear of safety at trial. Can I bring you back, because I wasn't really, again, to the striking. Is there some remedy of striking as to the mens rea issue? Well, Your Honor. Striking or should no. Is that an available remedy to us? I don't think so, Your Honor, because on the people of the imaginable, when the Illinois Supreme Court law says when there is an express mens rea in the statute and no or should no is a term of art that means negligence, where there's an express mens rea in the statute, courts aren't free to write in a new mens rea under the doctrine of constitutional avoidance. So lack of a culpable mens rea would knock out most sections of the statute in their entirety? It would knock out, of course, challenging only those statutes that he's convicted under. It would probably knock out those in their entirety. And then we'd fall back to what's in A5, which has a far narrower reach than the predecessor statute, which is essentially what the predecessor statute was before 2009. Your Honor, you'll have your... You can have a couple. I'm sorry. I do have a question. I'll defer to you. Oh, no. I was just going to give him a few minutes for the MSR. Before we get to the MSR, is there anything in your analysis of the case, and I have the same question for the State later on, where there is a different analysis based on the Illinois Constitution's guarantees on the Bill of Rights as opposed to the Federal? Not at the moment, Your Honor. They're both mentioned in there, but both of those provisions tend to work in lockstep. They work in lockstep with the Supreme Court on the First Amendment. Yes. In this context, at least, we're in lockstep, and you see the Illinois Supreme Court in cases like Clark v. Longo relying on the Federal law. And I would like to briefly mention the MSR thing. Sure. After Cassidy, there's only one way that the State is allowed to increase a sentence once judgment is implemented, and that's to file a petition for mandamus in the Illinois Supreme Court. They haven't done that here. His term of MSR was quadrupled when he wasn't even present on a very brief proceeding in the Circuit Court five months after he was originally sentenced. That's an increase in the sentence that's unauthorized by statute, and, you know, this Court said, if nothing else, this Court should promptly vacate the remaining years on his term of supervised release.  Thank you, Your Honor. Good morning, Your Honors. I'm Cook County Assistant State's Attorney Veronica Calderon-Malavia, representing the State. The offense before this Court, the conviction, is based on the stalking. That's what the judgment that was entered on. With respect to Aguilar, I don't believe Aguilar allows this Court to, you know, go behind the stalking and really address the constitutionality of the cyber-stalking unless the stalking is vacated. In Aguilar, there were two counts. In Aguilar, there was the Aggie, W, and UPF. The argument in Aguilar was that there was no, that the minor there didn't have standing to argue because he was a minor, and the Second Amendment didn't provide him standing because the Second Amendment didn't protect him. And that the, so it wasn't, the Court there didn't look behind to another count in which the judgment was argued. It would only be true if we found no impediment in Count 1. Correct. If we find any impediment in Count 1, we have to move on to 2. Correct. If we find an impediment in 2, we have to move to 3, and then to 4. Correct. If we find an impediment in Count 1 that's applicable to all four counts, then in that particular case, I suppose we have to address all four. Yes, you would. The only time we don't address the other three is if we were to affirm the conviction sentence on Count 1. Correct. Yes. All of defendant's arguments intentionally misread the statute. Contrary to defendant's portrayal, the statute does have a culpable mental state. A defendant must knowingly engage in coercive conduct towards a specific person. The statute requires that the defendant know or should know that this conduct will cause a reasonable person in the victim's situation to either fear for her safety or suffer significant emotional distress. Your Honor, your opponent argues that know or should know is a negligence standard. It is not a culpable mens re. And the fact that it says knowingly engages in coercive conduct, in this case, would only mean that he knowingly communicated to someone. The simple phrase that knows or should know, like in other statutes, doesn't create a new negligence offense when it's already been identified as an intentional or knowing. That's true if the activity that's spoken about is criminal in its own right. Then he doesn't need it. But in this particular case, there's activities here that aren't criminal in their own right. Communicating to a person is not criminal. So when does it become criminal? When he knowingly talks to somebody? It's not the communication that's criminal. No, what's criminal is the coercive conduct, the communication being one act. That's what it's called. Hold on a second. Coercive conduct is nothing more than a definition. You've got to find out where you fall in this definition in your charging allegation. I'm looking at your four counts. It appears as if in counts one and two, you were talking about the portion that talks about communicates to or about a person. And you're also talking about observes a person. That's Michigan Avenue, the Michigan Avenue situation. And I suppose observe also covers going to a place of employment. Now, entering upon your place of employment, you might have been able to prove criminal trespass to property if the charging person had been the owner of the property. But standing outside a place of employment is not a crime. So you have to have a culpable mens re to make the innocent behavior criminal. What is it? It's the coercive conduct. Hold on. Coercive conduct, there's a definition for coercive conduct. It includes but is not limited to a whole series of goodies. It's C1 in the statute. So you can't just say you couldn't get away with an indictment that said knowingly engage in a coercive conduct that reasonably put the person in fear of safety. Could you? No. You don't look at the significance of coercive conduct is that there would be one or more acts. Each individual act in and of itself may not be criminal, but it's altogether the coercive conduct. And all we have to do is look at the facts here. The defendant wants you to isolate each incident. Oh, he just waved. Oh, he just trespassed. Oh, he just sent a concussion. That's not the crime. I mean, that's not what the stalking and the separate stalking statutes visualize. There has to be two or more of these acts. Two or more. And let's look at here. Here, the evidence proves here that once the defendant's internship ended and he was not given a full-time position, he started calling and emailing the supervisors, including the victim. Even after he was told not to contact anyone at the station, he continued to contact the victim. Then he showed up at her outside her office as she left work. The victim was alarmed because she knew he wasn't welcome at the station anymore. Then he used subterfuge and entered the clear channel offices and startled the victim while she was on air. And then he started posting highly disturbing inflammatory Facebook posts about the victim. They included real threats. They included entirely unwanted sexual references to the victim, which would have gotten back to her. In fact, if you look at her posts, in the posts he directly spoke to her. For example, he said, I love you, Sonia. I'm definitely worried about you, Sonia. I'll ride for you, Sonia. And he even mentioned Sonia's name. And of the posts, four of the five posts are all about the victim, all about Sonia. In the fifth post, he's speaking directly to her. But we know the facts. Right, but it's the escalating course of his conduct towards the victim, which is criminal. Together, all these acts, the course of conduct, the defendant would normally engage in these. And he knew or should have known that they would cause a reasonable person in the victim's situation. But that's where Justice Hoffman is going here, is this reasonable person. So the question is, how do you get around U.S. v. Alanis? In fact, the language here basically resolves the, what was it, error in Alanis. In Alanis, the statute had no mental state, and the jury was instructed to, it only had to find that a reasonable person would regard the communication as a threat. And what we have here. It's very different. One, there's a mental state. Defendant must knowingly engage in the course of conduct. And second, that knows or should know language connects defendant's knowing course of conduct with the resulting harm. It makes sure the defendant knew or should have known that his knowing course of conduct will cause a reasonable person in a victim's situation to fear for her safety and suffer emotional distress. And I'd like to point out that there's other statutes that have a similar structure. In fact, the child pornography has a similar structure. And that also has First Amendment implications. In child pornography, if a defendant possesses pornographic material and he knows or reasonably should know that the minor depicting the material is under the age of 18, that's an offense. That's an intentional knowing offense. Just because the should know language was there, it did not convert it into a mere negligence. You can also look at aggravated discharge, aggravated arson, money laundering. All those offenses contain the knows or reasonably should know, and none of those intentional knowing offenses were converted into negligent offenses. And the same should be said here. All right. Well, let me segue to one other thing here. If you look at the structure and the history of this statute, this statute has evolved over the years and is a statute upon which a number of people have been charged and tried. So it's gone up and it's gone down. And previous versions were upheld either here in Illinois or in other states. And then apparently the legislature decided that it didn't encompass a broad enough scope of activities, so it gave us what we have on the table today. When this appears to be the first case, which has really involved A1 and A2, because I think A5 is the old version. What's your best case from somewhere in the country upholding a statute like A1 and A2? With respect to the First Amendment? Yeah. Okay. I'll go back to the seminal case of Black v. Virginia. In Black v. Virginia, what was at issue there was the cross-burning with intent to intimidate. Okay? Just a cross-burning. That's protected under the First Amendment, you know, under the right to express yourself. Okay? But they said in that case that it could be filming a movie. But the only thing that they invalidated facially there was the presumption. However, they recognized that when speech or writing is an integral part of a criminal statute, right, it's not protected under the First Amendment like bribery, like harassment, you know? So this is, it's one part that speech, communication is just one part of that statute. The difficulty with the reliance upon that case is that statute had a mens re, an intent to intimidate. There is no such thing in this statute. And the Supreme Court, by the way, was quite clear when they said by communicating something, that's not what makes the conduct wrongful. The critical element separating legal innocence and wrongful conduct is the threatening nature of the communication. Therefore, the mental state requirement must apply to the fact that the communication itself contains a threat. So in other words, in order to have a mental state, you have to intend it to be a threat. We're not concerned about how it's received unless, of course, the threat is criminal conduct in and of itself, in which case the mental state is implied by the criminal conduct that makes up the action. But standing in front of somebody's place of employment is not criminal unless, of course, there's a mens re that says you're doing it with the intent to threaten. Here, it's done with, there is a criminal intent. What is it? It's done with no intention, no intent. Ma'am, the only thing the statute says is he performed his acts knowingly. That means he knowingly called her, he knowingly stood on Michigan Avenue, and he knowingly entered her employment. You do or should have known is negligence. No, I disagree. I totally disagree. I think you can look at the child pornography statute. I think you can look at aggravated discharge and aggravated arson. Arson is a crime. Arson is a crime. The mental state is in the arson state. It's aggravated when you do something else. You can't say the same thing about child pornography. Child pornography, pornography in itself is protected by the First Amendment. What makes that a crime is that it's a minor under the age of 18, and that there, the mens re, is knowing or should know. And over here, you not only have the mens re, you have the knowingly, and what's absent in Alanis, you have the knows or should know, connecting it with the result of harm. But here, we don't need to rely on the should know. The defendant knew. And one of the facts that proved that he knew is he sent a letter apologizing to, apologizing for starving her. That's not the issue. The fact that he did know would require us to read the mental state of intentional activity into the statute. We can't do that. We can't do it under major law. But it's an alternative theory, and here the state has proven the new theory that he knew. Don't you have to have a statute that says it first? I mean, it's like, it's no different when a statute says intentionally or knowing. You know, if you charge both, and if you prove both, I mean, that's fine. In here, we prove both. Well, you understand that this statute doesn't say it was intentional. It doesn't say it. The only thing it says is he has to know he committed the act. The act itself is not criminal, except for maybe threatening. With the exception that none of these things in course of conduct are in and of themselves criminal. None of them. So he knows he did it, but the U.S. Supreme Court would say that's not enough. He has to intend the illegal result. He must intend it. And in this particular case, the only thing we've got in the statute is he knew or should have known that it would cause her emotional distress. Sounds to me like a tort. I think it's, I disagree, and I think my, you know, the child pornography shows that that's not true. That there's a knowing intent, there's a course of conduct, and defendant, and that's connected with the harm. And the defendant is responsible with that harm. And I think that there is a mens rea, the mens rea is knowing, and the state, you know, proved that. And additionally, there's no First Amendment violation. If you look at the stalking statute, it doesn't prescribe protected speech. What we're dealing here is either true threats or communications that are an intrugal part of the offense. And as I stated, the United States Supreme Court has found that those are valid statutes. And also, the no stalking, no contact order has survived First Amendment overbirth challenges here in the appellate court. And those are. Does the order of civil contact still mean criminal? The First Amendment applies the same. You know, the interpretation, whether something is a true threat or if something is an intrugal part is the same type of analysis, right? You know, the same case law, Virginia versus black, everything would apply. So. What about mens rea? The mens rea? In the context of civil no contact. Yeah, but that's a different provision here. And again, it's our position that there is a clear mens rea here. If a person were to read this statute and say that if he no longer commits a course of conduct, which includes these things, would a person know what communications to another he could make or couldn't make before he would be found culpable under this statute? How would I know that? How would I know what I could say? If my 60-year-old son goes down the block and tells a neighbor girl he loves her twice, is he guilty of a crime if she doesn't like it? No, you know, there's two things that protect. You know, a defendant has to knowingly should know or should know, and there's a reasonable person. You know, a reasonable person in a victim situation wouldn't, you know, suffer significant harm. How does he know? How does the potential defendant know that? I mean, you've got to place a person on notice as to what behavior they must commit when they step from legal contact to illegal contact. There are two or more acts that will or that would cause a person, a reasonable person, to suffer significant emotional distress or a place to interfere. That's straightforward. There's nothing confusing about that. It's a course of conduct. You know, like, well, let's look here, communicating about. The vile, unwanted sexual references that he made to the victim here, that's communicating about. And when you put it in context with all the other courses of conduct, showing up outside her place of employment, sneaking into the radio station while she was in there, that's threatening. That would threaten any reasonable woman, you know. And then the communicating to her, I love you, Sonia, and talking about, you know, naming her husband. I mean, when you put it all together, you know, that's a course of conduct that would place any reasonable person to fear for her safety or suffer significant emotional distress. So with respect to the supplemental issue, the MSR, it's well established under Illinois law that the trial court had the authority to correct MSR after a defendant filed his notice of appeal because it was a ministerial act. No one disputes the fact that the circuit court, when it entered the one-year MSR, made an error. And no one disputes that the amended minimus reflects the proper four-year MSR term that attached to a defendant's stalking conviction by operational law. I don't think, maybe there's not a dispute that that was the correct sentence under the applicable statute. But it was done without, you know, outside, but don't we have a procedure in place now after the abolition of the void sentence as to how this is supposed to be done? Yes. And how does it fit within that? Well, she did, I mean, the procedure is now that you're supposed to, you know, include the MSR period in the minimus. He did that. He just made error. And under McChristen, there the trial court didn't have an MSR. In other words, he went. You had a different statute in MSR under McChristen. In McChristen, the statute says it's presumed to be included in every sentence. Right. The judge didn't have to do it. For some reason, the legislature changed the statute and says it must be included within the sentence. Right. He only said one year. Well, it was a message to the circuit courts to include it. You know, it's not discretion to include it because, you know, the Department of Corrections was having problems and there was confusion and it was missing. However, it doesn't change the fact that under McChristen, it went from zero to nothing. Here, we're going from an improper MSR to the proper MSR. And it doesn't change. It's by operation of law. There's no discretion for the trial court. So your argument would be that if a criminal statute says mandatory minimum is six years to a maximum of, let's say, 15 years, and the trial judge gives him three years, he gets to correct that at some future time to give him six years? Yeah. As opposed to you being required to bring a petition for mandamus? Yeah, two years and 11 months into his jail sentence. Well, the one thing is I'm not asking you to change anything. I'm asking you to affirm what the circuit court did. Well, the question is did he really do it? Yes, he did. And that's exactly what this case is about. He sentenced him to six years plus one year of mandatory supervisory release. He did it. So my question to you is if you have a case that has a mandatory minimum of six years with a maximum of 15 and the judge gives him three, what's the state's alternative? That's what would happen because there's discretion there. Wait a minute. There's no discretion to give him less than the minimum. There is no discretion for that. So he gives him three when the mandatory minimum is six. Okay, I understand. What is your remedy? That would be mandamus. And that's your only remedy? Correct. This statute says mandatory supervisory release of three, and he gave him one. Right. But at the same time, when this was issued, there was authority, there is still authority, that a minimus could be corrected if it's a ministerial act. And that's what happened here. Those cases are where the judge says six years, two years, four years mandatory supervisory release, and the clerk writes down seven years in mandatory supervisory release. So, yes, it can be corrected any time because the judge said six and the clerk wrote seven. But that's the ministerial act. In this particular case, this judge gave him one year. He was mistaken, you know, and it was a mistake and it wasn't like he knew that there was four years, I'm going to give you one. He thought by operation Y it was one year because the law changed. He didn't realize that the law changed. I mean, and that's clear in the record. He said the law changed. It increased. MSR is, you know, attaches by law. So it was the people's position that it wasn't a ministerial. But depending on his briefs to Pearson and Kirkpatrick, Pearson is very different. In Pearson, that's the increase of a sentence after retrial. And what Pierce was trying to prevent was judicial vindictiveness. Here there was no such thing because the MSR period is by operation Y and there was no discretion. And the same is for Kirkpatrick. That also dealt with abuse of discretion on the judge's sentencing part at retrial. Here the court really formed a ministerial act and we asked this court to affirm that. So for these reasons and those in our brief, the people asked that this court affirm the stalking conviction and defendant's MSR period. Thank you, counsel. You have a few minutes. The state's position appears to be that if the legislature happens to put a ban on speech in the middle of a criminal statute, it can ban as much speech as it wants. That's how they're interpreting this exception for speech integral to criminal conduct. That position has to be rejected, otherwise none of our First Amendment rights are safe. And I'd like to address the distinction between this and the child pornography cases that some of them do allow a should-know mens rea. In those child pornography cases, the limitation on speech is allowed precisely because the horror of the abuse of children is so tightly bound with the production of child pornography. There is not only another crime, but a truly horrifying crime that's in a tight nexus with the production. Here we're talking about how a message is being received. And because we're talking about it, how does the listener understand what the speaker is saying? The statute, as it's written, places a speaker at risk of being a felon simply because somebody else has misinterpreted their words. Let me ask you a question. What would your argument against the statute be if this statute said that the defendant had to intend that the person suffer severe emotional distress or that he had to intend that the person fear for their safety? Any trouble with the statute then? I still think it would be constitutionally suspect, Your Honor.  That would be Bailey. No, Your Honor, because Bailey was limited to actual threats of bodily harm, bodily harm on the defense behalf. But if you threaten somebody with bodily harm, and you intend to threaten them with bodily harm, then you wouldn't even have to have the section in it that would say, Newer should have known that they would suffer any emotional distress or they would be in fear of it. It's like an assault. A person doesn't have to be afraid of you, but if you threaten to do bodily harm, you've committed a crime. So my problem with this statute is the mens rea. I think the mens rea is the most severe problem, but it's also there's a problem because of those very broad harms. It's emotional distress far broader than we'd see in an IED tort, and it's fear of safety, not necessarily fear of safety at the legal acts of the defendant. So it's easy to come up with several hypotheticals of perfectly accepted political speech that is intended to cause some emotional distress in order to alert its viewer. I'd suggest that one person's comment that causes emotional distress is simply another's consciousness raising. It's the kind of thing we see in the anti-abortion protests and the rest of it. The purpose of the stalking and the cyber-stalking statute is to prevent the domestic violence before it actually happens and this escalation of conduct that could lead to worse harm. Anything to be said about the fact that the cyber-stalking statute doesn't have an exception for speech that is protected by the First Amendment? I have no idea why they put an exception on one and not the other. It's just the momentum. The cyber-stalking statute is even more clearly directed at communications because activities online are on the stalk communications than the stalking statute is itself. So you'd think the legislature would be especially careful there. Instead we have the opposite. We have no findings, no effort at tailoring it at all from the legislature as to why we're sweeping in all these communications under the guise of a stalking statute. It's just this sort of brief mention that stalking somehow leads to other crimes. We have no idea why they're redefining stalking to include all these things like political protests or the golfer yelling floor at the golf course, Your Honors. Your Honors, this strategy should be struck down. It's facially unconstitutional. I ask that you reverse each of Mr. Relaford's convictions and enter no new sentence. Thank you. Thank you, Counsel. The matter will be taken under advice.